THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL FOWLER,<br><br>        Plaintiff,<br><br>    v.<br><br>SAN JUAN COUNTY et al.,<br><br>        Defendants. | CASE NO. C19-0208-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 17). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I. **BACKGROUND**

Plaintiff Daniel Fowler's relationship with Holly Dennis, his girlfriend, was turbulent at times and resulted in several contacts with San Juan County law enforcement officers. (*See* Dkt. No. 22 at 1.) On November 25, 2014, after Dennis broke up with Plaintiff, Defendant Deputy Sheriff Raymond Harvey responded to a pair of 911 calls in which Dennis first requested a welfare check of Plaintiff and then reported that Plaintiff refused to release Dennis's vehicle from his automotive shop. (Dkt. No. 19 at 2, 29.) On August 14, 2015, after Dennis asked Plaintiff to move out of her home, she called 911 to report Plaintiff was behaving in an enraged

manner towards her; she later reported he had vandalized her property. (*Id.* at 3.) Defendant Harvey investigated Dennis's reports and arrested Plaintiff for domestic violence malicious mischief. (*Id.* at 3–4.) Plaintiff was charged, and the San Juan County District Court entered a domestic violence protection order, which prohibited Plaintiff from having contact with Dennis. (*Id.* at 4.) On August 27, 2015, Dennis secured a second protection order from the Superior Court of Washington for San Juan. (Dkt. No. 22 at 1, 8.)

On December 21, 2015, Dennis obtained a modification to the superior court's protection order that terminated the no-contact provision. (*Id.* at 1, 15.) On February 24, 2016, the district court terminated its protection order. (*Id.* at 21.) The Sheriff's Office is routinely provided with copies of protection orders from the San Juan County District and Washington Superior Courts. (Dkt. No. 19 at 4.)

On March 1, 2016, Defendant Harvey saw Plaintiff and Dennis sitting together in Dennis's parked vehicle. (*Id.*) Defendant Harvey was aware that the district court had entered a protection order; he called the San Juan County Sheriff's Office dispatch and was erroneously told the protection order was still in place. (*Id.*). He ordered Plaintiff and Dennis to separate. (*Id.*) Plaintiff was adamant that the district court's protection order had been quashed and showed Defendant Harvey a copy of the order terminating the district court's protection order, but Plaintiff nevertheless complied. (*Id.* at 4–5.) On March 4, the next day that Defendant Harvey reported to work, he called dispatch again to clarify the status of the district court's protection order. (*Id.*) This time, dispatch told him that the district court's protection order had indeed been terminated but the superior court's protection order was still in place and prohibited Plaintiff from contact with Dennis. (*Id.* at 5.) Defendant Harvey called Plaintiff and left a voice message to this effect. (Dkt. No. 22 at 3.) The next day, Plaintiff left a voice message for Defendant Harvey stating that the superior court's protection order had also been quashed. (*Id.*)

On March 7, Defendant Harvey responded to Dawn Atkinson's report of the presence of Plaintiff as an unwanted person on a third party's property. (Dkt. No. 19 at 5.) When Defendant

Harvey arrived at the address, Atkinson told him that Plaintiff had been there with Dennis but had left and likely returned to his house. (*Id.* at 5–6.) Defendant Harvey called dispatch and was once again told that the superior court's protection order was in place. (*Id.* at 6). Defendant Harvey, along with Deputy Sheriff David Holland, went to Plaintiff's residence, knocked on the door, and spoke to Plaintiff. (*Id.* at 58.) The parties disagree over where the conversation took place. While Plaintiff maintains that he stood calmly just inside the threshold of his house with the door open, Defendant Harvey states that Plaintiff came out on the porch and was in an agitated state. (*See* Dkt. Nos. 19 at 6, 58; 22 at 4.) Defendant Harvey questioned Plaintiff about Atkinson's report. (Dkt. No. 19 at 58.) Next, Defendant Harvey questioned Plaintiff about his contact with Dennis and informed him that the superior court's protection order still prohibited him from contact with Dennis. (*Id.*) Plaintiff insisted that the order was no longer in effect. (*Id.*)

What happened next is also in dispute. Defendant Harvey maintains he attempted to place Plaintiff under arrest for violation of the superior court's protection order and advised Plaintiff to turn around and place his hands behind his back. (*Id.*) Defendant Harvey states that Plaintiff walked from the porch back into the house and continued resisting after Defendant Harvey and the other officer grabbed him and began applying handcuffs. (*Id.*) Defendants note that Defendant Harvey was aware of at least three previous incidents in which Plaintiff had been charged or convicted of assault, including one in which Defendant Harvey was the responding officer. (*Id.* at 2 and 11.) Defendant Harvey also maintains he did not know whether Dennis was present and was concerned that she could be in danger of harm from Plaintiff. (*Id.* at 6.)

Plaintiff maintains that when Defendant Harvey advised him that he had violated the superior court's protection order, Plaintiff remained calm, stated that he would retrieve the court order showing the modification, and turned to go to his bedroom. (Dkt. No. 22 at 4.) Plaintiff states that as he turned to look for the paperwork, Defendant Harvey unexpectedly slammed into him from behind, shoved him into a wall, brought him to the floor, pulled his left arm, and shoved it up towards his shoulder blade. (*Id.* at 4.) Plaintiff says he felt a pop and felt something

break in his shoulder. (*Id.* at 4–5, 26.) Plaintiff maintains that he was never given a warning or informed he was under arrest. (*Id.* at 4.) Plaintiff's daughter was present and corroborates his account. (*See* Dkt. No. 23.)

Defendants do not dispute that when Defendant Harvey and the other officer restrained Plaintiff, they grabbed Plaintiff by the arms, pushed him into a corner, damaging his glasses, forced him face down onto the floor, and twisted his left arm behind his back. (*See* Dkt. No. 21 at 8; 22 at 4; 25.) Plaintiff states that after cuffing him, Defendant Harvey pulled up on the cuffs again and caused Plaintiff more pain. (Dkt. No. 22 at 5.)

Defendant Harvey took Plaintiff to the sub-station to process him for booking (Dkt. No. 19 at 59.) Defendant Harvey asked dispatch to fax the superior court's protection order (*Id.*) Dispatch informed him that when they pulled the order from the filing drawer, they found an amendment stapled to the back that eliminated the no-contact provision. (*Id.*) The amendment to the protection order had not been logged in the dispatch computer system. (*Id.*) Defendant Harvey contacted Defendant Sheriff Ronald Krebs, who agreed that Plaintiff should be released. (*Id.*) Defendant Harvey apologized for the miscommunication and released Plaintiff. (*Id.*)

Plaintiff has had persistent pain following his arrest. (Dkt. No. 22 at 5.) Plaintiff states that his shoulder was seriously injured and required extensive surgery. (*Id.* at 5–6.) Plaintiff's shoulder condition has caused him financial hardship because it has impaired his ability to work as a mechanic, drive heavy equipment, or work with firewood. (*Id.* at 6.) Defendants dispute the extent of Plaintiff's shoulder injury and point to evidence showing that he had a preexisting degenerative joint condition that may have required surgery even without an injury. (Dkt. No. 26 at 4, 6.) Defendants also point to Defendant Harvey's arrest report, which states that Plaintiff said his left shoulder hurt because of a preexisting condition. (Dkt. No. 19 at 59.)

Plaintiff brings the following causes of action against Defendants: (1) arrest without probable cause in violation of 42 U.S.C. § 1983; (2) excessive use of force in violation of 42 U.S.C. § 1983; (3) municipal liability for violations of Plaintiff's Fourth Amendment rights in

violation of 42 U.S.C. § 1983; (4) negligence; (5) outrage; and (6) trespass.[1] (Dkt. No. 7 at 15–19.) Defendants move for summary judgment dismissing all of Plaintiff's claims. (Dkt. No. 17.)

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catlett*, 477 U.S. 317, 324 (1986).

### B. Defendant Harvey

To state a § 1983 claim, a plaintiff must allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

//

---

[1] Plaintiff concedes that his state law claims for assault, battery, and false imprisonment are time-barred pursuant to Wash. Rev. Code § 4.16.100(1). (*See* Dkt. No. 21 at 23.)

A warrantless arrest, which constitutes a "seizure," is "unreasonable" and thus unconstitutional if it is not supported by probable cause—*i.e.*, if "the facts and circumstances within [the arresting officer's] knowledge are [not] sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). Thus, to prevail on a § 1983 claim for false arrest, a plaintiff must demonstrate that, based on the facts known to the officer at the time of the arrest, there was no probable cause to arrest him. *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010). "Protection orders, like warrants, are not stamped from a single template." *Beier v. City of Lewiston*, 354 F.3d 1058, 1069 (9th Cir. 2004). "Law enforcement officers who act to enforce . . . a protection order therefore have a responsibility to familiarize themselves with the order's precise contents through some official source." *Id.*

1. Probable Cause and Wrongful Arrest

Plaintiff alleges his arrest violated his Fourth Amendment right to be free from unreasonable seizure because Defendant Harvey lacked probable cause to arrest him for violation of the superior court's protection order. (Dkt. No. 21). Construing the facts in the light most favorable to Plaintiff, Defendant Harvey was aware of the following facts: (1) Defendant Harvey had arrested Plaintiff for domestic violence malicious mischief against Dennis in August 2015; (2) the district court had entered a protection order prohibiting Plaintiff's contact with Dennis; (3) on March 4, dispatch admitted to Defendant Harvey that they had made an error when they told him the district court's protection order was still in place; (4) also on March 4, dispatch stated to Defendant Harvey that the superior court's protection order was still in place; (5) on March 5, Plaintiff left a voicemail for Defendant Harvey stating that the superior court's protection order was likewise no longer in effect; (6) on March 7, Atkinson informed Defendant Harvey that she had seen Plaintiff with Dennis; (7) also on March 7, dispatch reiterated that the superior court's protection order was still in effect; (8) when Defendant Harvey arrived at Plaintiff's house and spoke to him, Plaintiff did not deny his contact with Dennis but stated that

the superior court's protection order no longer prohibited Plaintiff's contact with Dennis. (*See* Dkt. No. 10 at 3-6, 51–52.)

Based on the facts available to Defendant Harvey, there was sufficient basis for a prudent officer to reasonably believe that probable cause existed to arrest Plaintiff for violation of the superior court's protection order. Defendant Harvey made multiple attempts to verify the contents of the protection orders against Plaintiff through an official source, and he only decided that probable cause existed after dispatch (erroneously) confirmed that the superior court's protection order was still in place. (Dkt. No. 19 at 6, 58.) Although Defendant Harvey was faced with conflicting information from dispatch and Plaintiff, it was reasonable under the circumstances to rely on dispatch, an official source. "A police officer who does not personally read [a protection] order . . . may fulfill his duty by obtaining information from authorized personnel—such as a supervisor or police dispatcher—who have access to the terms of the order." *Beier*, 354 F.3d at 1069. Although Defendant Harvey knew dispatch had made at least one prior error, that was not enough to make it unreasonable for him to have relied on this official channel of information instead of Plaintiff's assertion. Furthermore, once Defendant Harvey believed there was probable cause to indicate Plaintiff had violated a protection order, he was required to arrest Plaintiff for this offense. *See* Wash. Rev. Code §§ 10.99.055, 10.31.100(2)(a). Thus, Defendant Harvey possessed sufficient information to form an objectively reasonable belief that there was probable cause to arrest Plaintiff. Accordingly, Defendants' motion for summary judgment is GRANTED as to this claim.

        2.      <u>Illegal Entry</u>

Plaintiff also claims his arrest was illegal because Defendant Harvey entered his home without a warrant. (Dkt. 21 at 10–11.) While a warrantless arrest in a public place does not violate the Fourth Amendment, such an arrest made inside an individual's home is presumptively unreasonable, absent exigent circumstances. *Payton v. New York*, 445 U.S. 573, 590 (1980). On the other hand, if a suspect freely opens his door to police, he "voluntarily expose[s] himself to

warrantless arrest," regardless of whether he stands inside or outside the threshold of his home. *United States v. Vaneaton*, 49 F.3d 1423, 1426 (9th Cir. 1995) (quoting *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980)).

The parties dispute whether Defendant Harvey arrested Plaintiff on his porch or inside his home. (*See* Dkt. Nos. 17 at 9; 21 at 10.) But even if Plaintiff had remained inside the threshold of his home throughout the encounter, his Fourth Amendment rights were not violated because he voluntarily opened the door of his dwelling in response to a noncoercive knock by the police. *See Vaneaton*, 49 F.3d at 1426. Thus, Defendants' motion for summary judgment is GRANTED as to this claim.

3. <u>Excessive Use of Force</u>

In determining whether a police officer's use of force is unreasonable, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The surrounding circumstances must be judged objectively from the perspective of a reasonable officer on the scene. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). To evaluate the governmental interest, the Court looks to the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S at 396. Because the balancing of these factors "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment [] in excessive force cases should be granted sparingly." *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

Drawing all reasonable inferences in favor of Plaintiff, this Court concludes that a reasonable jury could find that Defendant Harvey applied excessive force. The degree of intrusion on Plaintiff's interests was significant. *See Graham*, 490 U.S. at 396. Defendant Harvey and Deputy Sheriff Holland grabbed Plaintiff, shoved him forcefully into the wall, slammed him

to the floor, and wrenched his arm until something broke or popped in his left shoulder. (Dkt. Nos. 22 at 4; 23 at 2–3.) This intrusion must be balanced against the governmental interest under the three *Graham* factors. *See Graham*, 490 U.S. at 396. First, Plaintiff was suspected of violating a domestic violence protection order, a misdemeanor crime, but one that requires arrest. (Dkt. No. 19 at 6.) Second, Defendants argue that Plaintiff was potentially a danger to the arresting officers or others because of his prior history of assaults and the possibility that Dennis was present and in danger. (Dkt. No. 17 at 14.) These two safety considerations, however, must be balanced against the fact that Plaintiff was unarmed and calm, he had been previously compliant in his interactions with Defendant Harvey, and Dennis was nowhere to be seen. (*See* Dkt. Nos. 19 at 4–5; 22 at 4.) Third, Plaintiff has submitted evidence that that he calmly told the officers he was going to retrieve his paperwork, then turned toward his bedroom, before the officers forcibly restrained him. (*See* Dkt. No. 22 at 4.) The appropriateness of the force Defendant Harvey used hinges on disputed questions of fact, including: (1) whether Plaintiff was agitated; (2) whether Plaintiff had already been placed under arrest and ordered to place his hands behind his back; (3) whether Plaintiff "fled" or merely stepped inside his home; (4) whether Plaintiff resisted the officers; and, crucially, (5) what degree of force Defendant Harvey applied to Plaintiff. On balance, a reasonable jury could conclude that Defendant Harvey's use of force was excessive to restrain a calm, unarmed individual suspected of violating a protection order where the officer had not yet placed the suspect under arrest and where the subject of the protection order was nowhere to be seen. *See Graham*, 490 U.S. at 396. Accordingly, Defendants' motion for summary judgment is DENIED as to this claim.[2] Because material facts are in dispute as to the reasonableness of Defendant Harvey's use of force, Defendants' motion for summary judgment on the basis of qualified immunity is likewise DENIED.

---

[2] Defendants argue that qualified immunity should protect Defendant Harvey from liability for the excessive use of force claim. (Dkt. 17 at 15.) Because material facts remain in dispute, including what degree of force Defendant Harvey used, Defendants have not established that Defendant Harvey is entitled qualified immunity.

### C. Municipal Liability

To state a claim against a municipal entity for a constitutional violation, "[a] plaintiff . . . . must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016). "The [Supreme] Court has further required that the plaintiff demonstrate that the policy or custom of a municipality 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1060 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Plaintiff alleges that Defendant San Juan County violated his Fourth Amendment rights by promulgating policies and customs or ratifying actual practices that caused Plaintiff's wrongful arrest and Defendant Harvey's excessive use of force. (Dkt. No. 7 at 15–16, 19–20.) Plaintiff also alleges Defendant San Juan County failed to properly train its officers on probable cause and use of force with such deliberate indifference that it violated Plaintiff's constitutional rights. (*Id.* at 19.) Plaintiff's claims against Sheriff Krebs[3] are functionally equivalent to Plaintiff's claim against San Juan County, the entity of which he is a part, so the Court will consider these claims together. *See Hafer v. Melo*, 502 U.S. 21, 25 (1997); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010).

//

---

[3] To state a § 1983 claim, a plaintiff must allege facts showing how any individually-named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Although Plaintiff states that Defendant Krebs is being sued in his individual capacity, Plaintiff has provided no evidence of Defendant Krebs's direct participation in Plaintiff's arrest or in the use of force against Plaintiff. (*See* Dkt. No. 7 at 3; *see generally* Dkt. No. 21.) Nor has Plaintiff opposed summary judgment on this claim. (*See* Dkt. No. 21 at 21–22.) The only theory of liability Plaintiff pursues against Defendant Krebs is a *Monell* municipal liability claim. (*Id.*) Accordingly, Defendant's motion for summary judgment is GRANTED as to claims against Defendant Krebs in his individual capacity.

### 1. Probable Cause and Wrongful Arrest

Plaintiff does not point to evidence in the record that shows Defendants failed to properly train officers on matters of probable cause or ratified unconstitutional acts by Defendant Harvey. (*See generally* Dkt. Nos. 7, 21.) Indeed, Plaintiff does not pursue this claim in his response. (*See* Dkt. No. 21.) Furthermore, because Defendant Harvey had probable cause to arrest Plaintiff, Plaintiff's Fourth Amendment rights were not violated. (*See supra* Section II.B). Accordingly, Defendants' motion for summary judgment is GRANTED as to this claim.

### 2. Excessive Use of Force

Plaintiff does not point to evidence in the record that shows Defendants failed to properly train officers on procedures for arrest and use of force. (*See generally* Dkt. Nos. 7, 21.) Nor does Plaintiff offer evidence to show that Defendants ratified and approved Defendant Harvey's use of force. (*Id.*) Indeed, Plaintiff does not pursue this claim in his response. (*See* Dkt. No. 21.) Accordingly, Defendants' motion for summary judgment is GRANTED as to this claim.

### 3. Record-Keeping

Plaintiff asserts a theory of municipal liability based on inadequate record-keeping, which he did not raise in his complaint. (*Compare* Dkt. No. 7 *with* Dkt. No. 21 at 18–21.) Plaintiff offers evidence showing that San Juan County employees made multiple errors in record-keeping and relayed inaccurate information to Defendant Harvey about the protection orders. (*See* Dkt. No. 19 at 51–52.) Plaintiff also presents evidence that, approximately one year after his arrest, the San Juan County prosecutor raised serious concerns about the accuracy of reports from the San Juan County Sheriff's Office. (*See* Dkt. No. 24 at 4.) Although Plaintiff has alleged in his complaint there were errors made relaying information about the protection orders, he did not specifically plead inadequate recordkeeping as a basis for municipality liability. (*See generally* Dkt. No. 7.) Plaintiff now requests leave to amend his complaint to pursue this theory of liability. (Dkt. No. 21 at 20.)

//

Amendments to complaints should be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). Such amendments should be granted unless they will cause the opposing party undue prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Discovery is not scheduled to close until November 20, 2019. (*See* Dkt. No. 16.) Defendants assert that Plaintiff's request for leave to amend is improper and that it was somehow rendered moot because, in his response, Plaintiff did not pursue his original theory of municipal liability he asserted in his complaint. (*See* Dkt. No. 25 at 9.) The Court rejects these arguments. There is not evidence of "bad faith, undue delay, prejudice to the opposing party, [or] futility of amendment" that would indicate that Plaintiff's request for leave to amend is improper. *See DCD Programs, Ltd.*, 833 F.2d at 186. Accordingly, the Court GRANTS Plaintiff leave to amend his complaint to assert a claim for municipal liability based on inadequate record-keeping.

**D.     State Law Claims**

        1.     <u>Outrage</u>

Plaintiff asserts that Defendant Harvey's conduct is outrageous under Washington's common law definition. (*See* Dkt. No. 21 at 23.) To state a claim for the tort of outrage under Washington law, the conduct must be sufficiently extreme to result in liability. *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989). "[M]ere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." *Id.* Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975). Mere negligence, or even malice, is insufficient to support a claim of outrage. *Waller v. State*, 824 P.2d 1225, 1235 (Wash. Ct. App. 1992).

Here, Plaintiff argues that Defendant Harvey maimed Plaintiff at home, in front of his child, without probable cause. (Dkt. No. 21 at 23.) But Defendant Harvey was present at Plaintiff's home for a legitimate law enforcement purpose: to investigate two possible crimes.

1 (Dkt. No. at 6, 57–58.) The information available to Defendant Harvey indicated that Plaintiff was in violation of a protection order and Defendant Harvey was therefore required to arrest him. (*See id.*); *see* Wash. Rev. Code §§ 10.99.055, 10.31.100(2)(a). At most, as discussed above, Plaintiff can show that Defendant Harvey used excessive force in slamming Plaintiff into a corner and onto the ground, conduct which falls far short of outrage under Washington law in both character and kind. *See Grimsby*, 530 P.2d at 295. Thus, Defendants' motion for summary judgment is GRANTED as to this claim.

### 2. Negligence

As to his state law negligence claim, Plaintiff observes correctly that it is permissible to plead in the alternative that Defendants negligently caused harm. (*See* Dkt. No. 21 at 23.) But Plaintiff does not identify the relevant standard of care, let alone point to facts that show that Defendants violated it. (*Id.*) Accordingly, Defendants' motion for summary judgment is GRANTED as this claim.

### 3. Trespass

Plaintiff's only argument in support of his trespass claim is that Defendant Harvey's intrusion into Plaintiff's home was unreasonable. (*Id.*) As discussed above, Defendant Harvey did not violate Plaintiff's Fourth Amendment rights by entering and arresting Plaintiff because Plaintiff had exposed himself to public view by answering his door. *See supra* Section II.B. Plaintiff does not point to any state law showing that these actions would constitute trespass under Washington law. Thus, Defendants' motion for summary judgment is GRANTED as this claim.[4]

//

---

[4] Moreover, even if Plaintiff had presented sufficient evidence to defeat summary judgment as to his negligence and trespass claims against Defendant Harvey, Defendant Harvey would be protected from liability by Washington statutory immunity based on his good faith actions in attempting to enforce the superior court's protective order. *See* Wash. Rev. Code §§ 10.99.055, 10.31.100(2)(a).

Accordingly, Defendants' summary judgment is GRANTED to Defendants on all state claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 17) is GRANTED in part and DENIED in part. Plaintiff's time-barred state law claims for assault, battery, and false imprisonment are DISMISSED with prejudice. Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims for: (1) arrest without probable cause in violation of 42 U.S.C. § 1983; (2) negligence; (3) outrage; and (4) trespass. Those claims are DISMISSED with prejudice. Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims for municipal liability in violation of 42 U.S.C. § 1983, but this claim is DISMISSED without prejudice and with leave to amend to assert a theory of liability premised on inadequate record-keeping. Any amended complaint must be filed within 14 days of the date this order is issued.

DATED this 20th day of September 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE